IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FREDERICK BUCHANAN,          :
AIS 235878,
                             :
    Petitioner,
                             :
vs.                                    CA 07-0132-KD-C
                             :
KENNETH JONES,
                             :
    Respondent.

**REPORT AND RECOMMENDATION**

    Frederick Buchanan, a state prisoner presently in the custody of the respondent, has petitioned this Court for federal habeas corpus relief pursuant to 28 U.S.C. § 2254. This matter has been referred to the undersigned for the entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4). It is recommended that the instant petition be dismissed as time barred under the Anti-Terrorism and Effective Death Penalty Act's one-year limitations provision contained in 28 U.S.C. § 2244(d).

**FINDINGS OF FACT**

    1.    Buchanan was convicted in the Circuit Court of Mobile County, Alabama on May 21, 2004 of capital murder; the jury recommended that petitioner be punished by life in prison without the possibility of parole. (Doc.

9, Exhibit E, Case Action Summary Sheet) The trial court accepted the jury's recommendation and sentenced Buchanan to life imprisonment without the possibility of parole on July 7, 2004. (*Id.*) Jones gave oral notice of appeal at his sentencing. (*Id.*)

2.      The Alabama Court of Criminal Appeals affirmed Buchanan's conviction and sentence by memorandum opinion entered on January 21, 2005. (Doc. 9, Exhibit B)

> The evidence showed that the appellant and the victim, Deborah Anderson, were employed at U-Save Auto Rental; that the appellant was a detailer, and the victim was the office manager; that the appellant and the victim were close; that the victim fired the appellant on Friday, June 21, 2002, and withheld approximately $200 from the appellant's last paycheck because he owed her money; and that the appellant wanted money and said something about taking money from the cash drawer and having the victim report it stolen. The evidence further showed that, during the afternoon of June 27, 2002, the victim spoke to her husband on the telephone and told him that the appellant was at her office; that, shortly thereafter, the victim's body was discovered at the office; that the victim had been stabbed twice and died at the scene; and that $800 was missing from the business.
>
> Jarvis Johnson testified that, that morning, the appellant called him and asked him to drive him to U-Save Auto Rental to pick up his check; that he later drove the appellant there; that the appellant went inside, came back outside, and said that he did not get his check; that the appellant then said that he forgot something and went inside again; that the appellant returned and said that he had stabbed the victim two times, that he did not try to do it, and that he thought he had killed her; that the appellant

subsequently discarded the knife and the clothes he had been wearing; and that the appellant gave him money that had blood on it. Johnson also testified that the appellant had told him he could not see his children if he did not come up with a certain amount of money and had told him that U-Save Auto Rental was playing with his money and had not given him all of his last check.

That night, the appellant called Johnson's wife and told her that Johnson had not had anything to do with it and had stayed in the vehicle the entire time. Later, he also called his girlfriend and admitted that he had killed the victim. Finally, he admitted that he stabbed the victim, but contended that he did not intend to stab the victim when he went there.

The appellant argues that the trial court erroneously refused to give the following jury instruction:

> "The Court charges the jury that even though the knife wounds producing death might have been wrongful and intentionally struck, it would be no more than manslaughter if perpetrated without an intent to kill."

(C.R. 142.) Specifically, he contends that the instruction was necessary "to clarify the principle that the use of a deadly weapon created only a permissive inference, and did not necessarily infer the intent to kill, and that where there is a killing with no intent to kill the offense is manslaughter." (Appellant's brief at pp. 13-14.) During the charge conference, the trial court stated that it was refusing to give the requested instruction because it believed the instruction was confusing. After the oral charge, the State argued that the instruction was incorrect because it was confusing and did not take into account other offenses on which the trial court had given instructions, including felony-murder.

> "'A trial court has broad discretion in

>> formulating its jury instructions, providing they are an accurate reflection of the law and facts of the case. Coon v. State, 494 So.2d 184 (Ala. Cr. App. 1986). When requested charges are either fairly and substantially covered by the trial judge's oral charge or are confusing, misleading, ungrammatical, not predicated on a consideration of the evidence, argumentative, abstract, or a misstatement of the law, the trial judge may properly refuse to give such charges. Ex parte Wilhite, 485 So.2d 787 (Ala. 1986).'
>
> "Ward v. State, 610 So.2d 1190, 1194 (Ala. Cr. App. 1992)."
>
> Hemphill v. State, 669 So.2d 1020, 1021 (Ala. Crim. App. 1995) (emphasis omitted).
>
> We have reviewed the instruction, and we agree that, under the facts of this case, it was confusing, misleading, and a misstatement of the law. Specifically, the instruction provided that, if the appellant used the knife intentionally, but did not intend to kill the victim, he could be found guilty only of manslaughter. However, it did not allow for a finding of guilty of any other offense, such as felony-murder, that would have been supported by the facts of this case. Therefore, the trial court did not abuse its discretion in refusing to give the requested instruction, and we affirm that court's judgment.

(*Id.* at 1-4) Buchanan's application for rehearing was overruled on February 11, 2005. (Doc. 9, Exhibit C) Petitioner did not file a petition for writ of certiorari in the Alabama Supreme Court; therefore, the certificate of final judgment of affirmance was issued by the Alabama Court of Criminal Appeals on March 2, 2005. (Doc. 9, Exhibit D)

4

3. On July 13, 2005, Buchanan filed a Rule 32 petition in the Circuit Court of Mobile County, Alabama, collaterally attacking his conviction and sentence. (Doc. 9, Exhibit F, at 1-2) The Rule 32 petition was summarily dismissed by the trial court, without an evidentiary hearing, on August 18, 2005 (Doc. 9, Exhibit E, August 18, 2005 ORDER); petitioner filed written notice of appeal on September 1, 2005 (Doc. 9, Exhibit E, Notice of Appeal to the Court of Criminal Appeals of Alabama). The Alabama Court of Criminal Appeals affirmed the trial court's summary dismissal of the collateral petition by memorandum opinion dated April 21, 2006. (Doc. 9, Exhibit F)

> In his petition, Buchanan claimed that: 1) his guilty plea was involuntary; 2) he was illegally seized by the police, taken to the police station, and questioned for seven and a half hours absent probable cause to arrest; 3) his confession was the result of an illegal arrest (see # two above) and was the result of improper threats and coercion by the interrogating officers; 4) trial counsel was ineffective: (a), because without Buchannan's consent, counsel constructively entered a guilty plea during opening and closing statements by conceding to the jury that Buchanan had killed the victim by stabbing her with a knife; (b), because counsel's concession (see four (a)) denied Buchanan the right to have the jury decide his guilt; (c), because counsel failed to investigate the audio tape of his interrogation in order to discern that his confession was the product of coercion; and, (d), because counsel's inaction in investigating resulted in Buchanan losing constitutionally protected rights.
>
> The circuit court granted the State's motion to dismiss by finding the claims procedurally precluded or without merit.

Buchanan reiterates the claims in his petition on appeal.

. . .

### Substantive Claims

There is no merit to Buchanan's claim that his guilty plea was involuntary. Buchanan was convicted after a jury trial.

Buchanan's claim that he was illegally seized and questioned and his claim that his confession was coerced are constitutional claims. Constitutional issues are nonjurisdictional and are subject to the procedural bars of Rule 32.2, Ala.R.Crim.P. Thus these claims are procedurally precluded because they could have been, but were not, raised at trial or on appeal.

### Ineffective Assistance of Counsel Claims

Buchanan contends that trial counsel was ineffective because during defense counsel's opening and closing statements, counsel stated to the jury, "'Let's just leave. There is no reason for us to be here . . . we're telling you now that there was a homicide and we're telling you now that Fred is the one that did it. . . . We admitted we did it. We did it. We did it with a knife.'" (CR. 24-25.) According to Buchanan, counsel's admission that Buchanan had caused the victim's death was both deficient performance and prejudicial because the admission constituted an involuntary guilty plea and also denied Buchanan the constitutional right to have the jury decide his guilt.

. . .

The trial court ruled as follows concerning Buchanan's ineffective assistance of counsel claims:

> "Petitioner's claim that he was denied effective assistance of counsel is precluded

6

>because he did not raise the claim as soon as practicable. Rule 32.2(d). Furthermore, Petitioner's claim is without merit because he contends that the ineffectiveness consisted of his trial counsel entering the equivalent of a guilty plea on his behalf, and he did not consent to such. Clearly, trial counsel did not enter a guilty plea on Petitioner's behalf, but rather tried a four day jury trial, and Petitioner was found guilty by a jury. The evidence was overwhelming that Petitioner killed Deborah Anderson. Trial counsel's excellent strategy of admitting that Petitioner caused her death, but focusing on aspects of the events that would indicate Petitioner did not possess the requisite intent necessary for capital murder was not ineffective assistance of counsel. Both trial attorneys for Petitioner have many, many years experience and have tried many capital cases. The Petitioner must show that counsel's performance was deficient and that he was prejudiced as a result of the deficient performance. He has done neither. The claim further fails for lack of specificity.
>
>"Accordingly, this court is authorized summarily to dismiss the petition without an evidentiary hearing.
>
>"The petition is dismissed under Rule 32.7."

(CR. 36.)

Although Buchanan was appointed new appellate counsel after sentencing, it is unclear from the record whether new counsel could have timely presented ineffective assistance of counsel claims in a motion for new trial in order to preserve appellate review on direct appeal. Thus, we cannot affirm the

7

circuit court's findings on this procedural ground.

Buchanan's claim concerning counsel are matters of trial strategy. Thus, Buchanan had the burden of pleading facts to overcome the presumption that his counsel's decisions regarding his defense were sound trial strategy. Our memorandum from direct appeal reveals that testimony was presented at Buchanan's trial that placed Buchanan at the crime scene near the time of the murder; that Buchanan was in a dispute over money with the victim; and that Buchanan left the murder scene with money stained with blood. Moreover, in addition to his own confession to the police, two witnesses testified that Buchanan told them that he had killed the victim. It also appears from our memorandum on direct appeal that counsel attempted to persuade the jury that Buchanan lacked the intent to commit capital murder. Instead counsel sought a conviction based on some less culpable mental state such as manslaughter.

Faced with such strong evidence that Buchanan caused the victim's death, Buchanan's pleadings did not overcome the presumption that the challenged action constitutes sound trial strategy. Accordingly, Buchanan failed to satisfy either the burden of pleading requirements of Rule 32.3, Ala.R.Crim.P., or the specificity requirements of Rule 32.6(b), Ala.R.Crim.P. Thus, the circuit court properly denied this claim without an evidentiary hearing.

Buchanan's claims that counsel was ineffective for failing to investigate the audio tapes of his interrogation and that counsel's inaction in investigating resulted in the loss of constitutional rights are not sufficiently pleaded to demonstrate that his counsel's performance was deficient or that he was prejudiced by the deficient performance. Accordingly, they failed to satisfy either the burden of pleading requirements of Rule 32.3, Ala.R.Crim.P., or the specificity requirements of Rule 32.6(b), Ala.R.Crim.P.

For the above reasons, the circuit court is affirmed.

8

(*Id*. at 2-3 & 4-6 (internal citations and quotation marks omitted)) Petitioner's application for rehearing was overruled by the Alabama Court of Criminal Appeals on May 19, 2006 (Doc. 9, Exhibit G) and the certificate of final judgment of affirmance was issued by that court on June 7, 2006 (Doc. 9, Exhibit H).

4. Buchanan filed a petition seeking habeas corpus relief in this Court on February 16, 2007. (Doc. 1, at 13 (petitioner signed the § 2254 form on February 16, 2007))[1] Buchanan's petition contains the following reference to 28 U.S.C. § 2244(d) and its application in this case: "Because after the direct appeal was affirmed Petitioner filed a Rule 32 petition which was also affirmed and certificate of Judgment was issued June 7th, 2006[.] [Therefore] [] the one-year statute of limitations did not start to run until June 2006." (Doc. 1, at 12)

## CONCLUSIONS OF LAW

1. The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") was enacted on April 24, 1996 and, pertinent to this case, added a new subdivision to 28 U.S.C. § 2244 providing for a one-year period of

---

[1] *See Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001) (Absent evidence to the contrary in the form of prison logs or other records, [this court] will assume that [the instant petition] was delivered to prison authorities the day [petitioner] signed it . . . .").

9

limitations within which state prisoners must file their habeas corpus petitions pursuant to 28 U.S.C. § 2254. *Wilcox v. Florida Dept. of Corrections*, 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied sub nom. Wilcox v. Moore*, 531 U.S. 840, 121 S.Ct. 103, 148 L.Ed.2d 62 (2000).

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

2. Subsections (B), (C), and (D) of § 2244(d)(1) clearly do not apply to petitioner's case and therefore, the timeliness of Buchanan's petition must be calculated under § 2244(d)(1)(A) based upon the date on which his capital murder conviction became final. "For prisoners whose convictions became final prior to the effective date of the AEDPA, the one-year statute of limitations instituted by the AEDPA began to run on its effective date, i.e., April 24, 1996." *Guenther v. Holt*, 173 F.3d 1328, 1331 (11th Cir. 1999) (citations omitted), *cert. denied*, 528 U.S. 1085, 120 S.Ct. 811, 145 L.Ed.2d 683 (2000). This rule from *Guenther* is obviously not applicable in this case since Buchanan's conviction became final in 2005.

3. Section 2244(d)(1)(A) specifically provides that the one-year limitations period will run from "the date on which the judgment became final by the conclusion of direct review or the expiration of time for seeking such review[.]" On direct appeal, the Alabama Court of Criminal Appeals affirmed Buchanan's conviction and sentence by memorandum opinion on January 21, 2005. Buchanan's application for rehearing was overruled on February 11, 2005. Petitioner did not request certiorari review of his conviction and sentence in the Alabama Supreme Court;[2] therefore, the Alabama Court of

---

[2] The filing of an application for rehearing is a prerequisite for certiorari review by the Alabama Supreme Court. Ala.R.App.P. 40(d)(1) ("In all criminal cases except pretrial

Criminal Appeals issued a certificate of judgment on March 2, 2005. Accordingly, Buchanan's conviction became final on March 2, 2005. *Brown v. Hooks*, 176 Fed. Appx. 949, 951 (11th Cir. 2006) ("On March 23, 2001, the Alabama Court of Criminal Appeals affirmed his conviction. Brown did not petition for *certiorari* review in the Alabama Supreme Court, and his conviction became final on April 10, 2001, when the Certificate of Judgment issued."); *see also* Ala.R.Crim.P. 41(a) ("The certificate of judgment of the court shall issue 18 days after the entry of judgment" unless a timely application for rehearing is filed.); s*ee Bridges v. Johnson*, 284 F.3d 1201, 1202 (11th Cir. 2002) ("Bridges pled guilty to terroristic threats, aggravated assault and stalking charges, and was sentenced to 26 years' imprisonment on November 12, 1996. He did not appeal his convictions and sentences, but he did request that his sentence be reviewed by a sentence review panel, pursuant

---

appeals by the state, the filing of an application for rehearing in the Alabama Court of Criminal Appeals is a prerequisite to certiorari review by the Alabama Supreme Court."). Though Buchanan met this prerequisite, he ultimately failed to seek certiorari review by the Alabama Supreme Court, thereby preventing the court of last resort in Alabama from considering his direct appeal; therefore, the Supreme Court of the United States clearly would have been unable to consider Buchanan's case on direct review. *See Pugh v. Smith*, 465 F.3d 1295, 1299 (11th Cir. 2006) ("The Supreme Court of the United States may grant a writ of certiorari to review the final judgment of 'the highest court of a State in which a decision could be had.' . . . A defendant has 90 days from the judgment of the state court of last resort to file a petition for a writ of certiorari in the Supreme Court of the United States. . . . In the absence of a clear statutory or constitutional bar to higher state court review . . . the Supreme Court requires petitioners to seek review in the state's highest court before filing a petition for writ of certiorari.").

to O.C.G.A. § 17-10-6. . . . As provided in 28 U.S.C. § 2244(d)(1)(A), his judgment became final on the date that the time for seeking direct review expired; this date was not affected by his application for sentence review, because an application for sentence review is not a part of the direct appeal process under Georgia law. . . . Accordingly, Bridges' judgment of conviction became final on December 21, 1996, the date on which his 30-day right to appeal the November 21, 1996 judgment expired."); *Tinker v. Moore*, 255 F.3d 1331, 1332 & 1333 (11th Cir. 2001) ("Tinker was convicted on the robbery charge, and on January 29, 1997, the Third District Court of Appeal affirmed his conviction. . . . The mandate issued on February 14, 1997. . . . Under Florida law, a judgment against a criminal defendant becomes final upon issuance of the mandate on his direct appeal. . . . Tinker's mandate issued on February 14, 1997, and thus he had until February 13, 1998, to file his § 2254 petition, absent tolling of the limitations period."), *cert. denied*, 534 U.S. 1144, 122 S.Ct. 1101, 151 L.Ed.2d 997 (2002).[3]

---

[3] This Court recognizes that AEDPA's one-year statute of limitations "allows a prisoner the time to seek direct review in the Supreme Court of the United States." *Pugh, supra*, 465 F.3d at 1299; *see also Bond v. Moore*, 309 F.3d 770, 774 (11th Cir. 2002) ("Appellant was entitled to file a petition for writ of certiorari in the United States Supreme Court within 90 days of the entry of the judgment against him by the Florida Supreme Court. Sup.Ct.R. 13.1. The statute of limitations under 28 U.S.C. § 2244(d) should not have begun to run until this 90-day window had expired. Appellant's state judgment became final on December 13, 1996, when the Florida Supreme Court denied Appellant's motion for a rehearing. The statute of limitations

      4.      Buchanan's one-year period of limitations under AEDPA began to run on March 2, 2005. Petitioner filed his first Rule 32 petition collaterally attacking his conviction and sentence in the Circuit Court of Mobile County, Alabama on July 13, 2005, some one hundred thirty-three (133) days after his conviction became final. The statute of limitations, therefore, was tolled until June 7, 2006 (Doc. 9, Exhibit H), when the Alabama Court of Criminal Appeals issued its certificate of final judgment of affirmance, affirming the trial court's summary dismissal of Buchanan's Rule 32 petition. 28 U.S.C. § 2244(d)(2) ("The time during which a properly filed

---

should have begun to run, therefore, on March 17, 1997."). However, in those instances, as here, where a petitioner is not entitled to seek review in the Supreme Court of the United States, he is not entitled to benefit of the 90-day period for filing a petition for writ of certiorari in the United States Supreme Court, Sup. Ct. R. 13.1 ("Unless otherwise provided by law, a petition for writ of certiorari to review a judgment in any case, civil or criminal, entered by a state court of last resort . . . is timely when it is filed with the Clerk of this Court within 90 days after the entry of the judgment. A petition for a writ of certiorari seeking review of a judgment of a lower state court that is subject to discretionary review by the state court of last resort is timely when it is filed with the Clerk within 90 days after entry of the order denying discretionary review."); 28 U.S.C. § 1257(a) ("Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari where . . . any title, right, privilege, or immunity is specially set up or claimed under the Constitution or the treaties or statutes of, or any commission held or authority exercised under, the United States."). *See Pugh,* 465 F.3d at 1299-1300. As previously established, Buchanan did not seek direct review of his conviction and sentence in the state court of last resort, that is, the Alabama Supreme Court; therefore, he was not entitled to seek direct review in the United States Supreme Court. *See id*. Buchanan's conviction became final when the certificate of judgment issued from the Alabama Court of Criminal Appeals on March 2, 2005, *Brown, supra,* and this Court need not add to that final judgment date the 90 days contemplated in Supreme Court Rule 13.1, *compare Pugh,* 465 F.3d at 1299-1300 *with Tinker, supra,* 255 F.3d at 1332 & 1333.

14

application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section."); *Guenther, supra*, 173 F.3d at 1331 ("'The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation in [subsection (d)].'") *cf. Coates v. Byrd*, 211 F.3d 1225, 1227 (11th Cir. 2000) ("We agree with the Tenth and Fifth Circuits that the time during which a petition for writ of certiorari is pending, or could have been filed, following the denial of collateral relief in the state courts, is not to be subtracted from the running of time for 28 U.S.C. § 2244(d)(1) statute of limitations purposes."), *cert. denied*, 531 U.S. 1166, 121 S.Ct. 1129, 148 L.Ed.2d 995 (2001).

    5.    As heretofore indicated, Buchanan filed the instant federal habeas corpus petition in this Court on February 16, 2007, some two hundred and fifty-four (254) days after June 7, 2006. Adding this period (i.e., 254 days) to the 133 days that ran before Buchanan filed his collateral attack on his conviction and sentence makes the instant petition tardy by some twenty-two (22) days. Petitioner's conclusory argument in his habeas petition that his

one-year limitations period did not begin to run until June 7, 2006 is simply incorrect inasmuch as this argument ignores the time that ran between when his conviction became final and when he filed his state collateral petition. While petitioner makes no equitable tolling argument, the undersigned considers the doctrine *sua sponte*.

      6.      Recent decisions of the Eleventh Circuit have clearly embraced the doctrine of equitable tolling with regard to the one-year limitations period at issue: "Equitable tolling is to be applied when '"extraordinary circumstances" have worked to prevent an otherwise diligent petitioner from timely filing his petition.' . . . Thus, the petitioner must show both extraordinary circumstances and due diligence in order to be entitled to equitable tolling." *Diaz v. Secretary for the Dept. of Corrections*, 362 F.3d 698, 700-701 (11th Cir. 2004) (citation omitted). "Section 2244 is a statute of limitations, not a jurisdictional bar. Therefore, it permits equitable tolling 'when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence.'" *Steed v. Head,* 219 F.3d 1298, 1300 (11th Cir.2000) (citation omitted). Thus, the one-year limitations provision need not be equitably tolled unless there is evidence that "extraordinary circumstances" beyond petitioner's control made it

impossible for him to file his petition on time. *See Miller v. New Jersey State Dept. of Corrections*, 145 F.3d 616, 618-619 (3rd Cir. 1998) ("[E]quitable tolling is proper only when the 'principles of equity would make [the] rigid application [of a limitation period] unfair.' . . . Generally, this will occur when the petitioner has 'in some extraordinary way . . . been prevented from asserting his or her rights.' . . . The petitioner must show that he or she 'exercised reasonable diligence in investigating and bringing [the] claims.' . . . Mere excusable neglect is not sufficient."); *Calderon v. United States District Court for the Central District of California*, 128 F.3d 1283, 1288 (9th Cir. 1997) ("Equitable tolling will not be available in most cases, as extensions of time will only be granted if 'extraordinary circumstances' beyond a prisoner's control make it impossible to file a petition on time."), *cert. denied*, 522 U.S. 1099, 118 S.Ct. 899, 139 L.Ed.2d 884 (1998) and *cert. denied sub nom. Beeler v. Calderon*, 523 U.S. 1061, 118 S.Ct. 1389, 140 L.Ed.2d 648 (1998).

      7.     In this case, petitioner has not established that the instant habeas corpus petition was timely filed nor has he established that extraordinary circumstances and due diligence counsel equitable tolling of the limitations period. *See Spottsville v. Terry*, 476 F.3d 1241, 1245 (11th Cir. 2007) ("'The

burden of establishing entitlement to this extraordinary remedy plainly rests with the petitioner[.]'"). Petitioner makes no argument that he was ignorant of the one-year limitations period. It is apparent to the undersigned that nothing other than petitioner's own lack of due diligence and his miscalculation of the time period are responsible for the untimeliness of the filing of the instant petition. This is simply not one of those rare cases in which principles of equitable tolling can save petitioner from AEDPA's one-year limitations period.

## CONCLUSION

The Magistrate Judge recommends that the instant petition be dismissed as time-barred pursuant to 28 U.S.C. § 2244(d).

The attached sheet contains important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this the 4th day of September, 2007.

   s/WILLIAM E. CASSADY
   **UNITED STATES MAGISTRATE JUDGE**


**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
FINDINGS CONCERNING NEED FOR TRANSCRIPT**

1.    *Objection*. Any party who objects to this recommendation or anything in it must,

within ten days of the date of service of this document, file specific written objections with the Clerk of this court. Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge. *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*). The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days after being served with a copy of the recommendation, unless a different time is established by order. The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection. The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made. It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      *Transcript (applicable Where Proceedings Tape Recorded)*. Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review. Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

　　　　　　　　　　　　　　　　　　　　　　 s/WILLIAM E. CASSADY　　　　　　　
　　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE